[Filed February 11, 1890.]

## I. R. DAWSON, Assignee, Appellant, *v.* E. M. CROISAN and T. B. PATTON, Respondents.

Section 2835 Construed.—Section 2835, Annotated Code, being § 2 of the Act to facilitate the collection of taxes, approved October 24, 1866, which provides to the effect that when any personal property, or personal estate, shall be assessed to any person "who is not a permanent resident of the county," or "who is about to depart, or to remove his property therefrom," the assessor shall demand immediate payment of the tax thereon, at the same rate per cent. as the preceding year's taxes, and in default of such payment he shall immediately collect the same by delivering to the sheriff a list thereof, and the sheriff shall immediately collect it by a sale of personal property, does not apply in terms, or by intendment, to a non-resident of the county engaged in business therein, but was intended to apply to a class of transient persons living in a county without any purpose of residing there permanently, and also to persons who are residing in the county, but who have arranged their affairs with a view of departing therefrom, or of removing their property to some other locality, and who might evade the payment of their taxes if summary means were not adopted to enforce payment of them. Whether said Act is reconcilable with the clause of the Constitution of the State which declares that all taxes shall be equal and uniform, *query?*

Injunction—Will Not Lie to Restrain Illegal Tax Unless Damages Inade-quate.—In case of an illegal tax assessed against personal property, where there is no fraud, an injunction will not be granted unless it is shown that the recovery of damages on account of its enforcement would not be an adequate redress.

Case in Judgment.—Where a merchant who resided in a certain county, and carried on his business there, became insolvent and made an assignment of his property and effects, consisting mainly of personal property, to the appellant, for the benefit of his creditors, and the latter, who was a resident of another county in the State, qualified and entered upon the discharge of his trust, and the assessor of the county in which the business was situated assessed the appellant for the property

so assigned, and because the appellant was such non-resident of the county proceeded, in accordance with said § 2835 of the Code, to collect the tax, and the sheriff, in pursuance thereof, seized and threatened to sell a part of the personal property so assigned; *held,* that the proceeding was illegal, *held further,* that as the property was in the hands of the appellant, as trustee, and he was charged with its inventoried price, and would be compelled to account for it, and that such threatened disposition of it would necessarily embarrass the settlement of the business pertaining to the trust, and in view of other circumstances connected with the affair, the appellant's remedy by injunction was proper.

APPEAL from a decree of the circuit court for the county of Marion dismissing the appellant's complaint in a suit to enjoin the sheriff from selling property for the non-payment of taxes.

It was alleged in the complaint that the respondents were, respectively, the sheriff and the assessor of Marion county, Oregon; that on the twenty-sixth day of May, 1888, Elias Eberhard, a resident of said county and State, made a general assignment for the benefit of his creditors, under the statute, to the appellant; that prior to making said assignment said Eberhard had been carrying on a general merchandise store at the town of Champoeg, in said county and State, keeping goods for sale; that appellant was the duly appointed, qualified and acting assignee of said Eberhard, and had been such since the assignment; that as such assignee he came into possession of said stock of goods, also certain book accounts and other property situated at Champoeg and being the property formerly owned by said Eberhard, and was selling and disposing of the goods and collecting said accounts for the purposes of complying with his duty as such assignee; that said assignment was still pending in said circuit court; that appellant was during all the times therein mentioned a resident of the county of Multnomah, State of Oregon; that on the —— day of ————, 1888, and before the commencement of the suit, the said assessor demanded of appellant county, State and school taxes for said Marion county, for the year 1888, on said property, amounting to $53.76, which he refused to pay; that the statement of assessment of appellant under which the assessor demanded the taxes was attached to the complaint; that thereafter the said

sheriff demanded of appellant the said taxes, which the
latter refused to pay, and thereupon the sheriff levied upon
certain goods described in the complaint and belonging to
appellant, being part of said stock mentioned, of the value
of $225, and took and carried away the same, and was
threatening and advertising to sell them at public auction
on the twenty-second day of August, 1888, to satisfy said
taxes; that said sheriff had no warrant or writ for the col-
lection of said taxes other than the said statement of as-
sessment delivered to him by said assessor, together with
an endorsement thereon appearing in the exhibit of said
statement attached to the complaint; that before the com-
mencement of the suit appellant delivered to said assessor
a statement of his property subject to taxation in Marion
county, together with a statement of indebtedness against
said property, a copy of which was also attached to the
complaint; that such indebtness amounted to $7,048; that
it was indebtedness due from said Eberhard to the parties
therein named before the making of said assignment; that
said assessor refused to deduct from the assessment of
appellant the said indebtedness; that there had been no
warrant issued in said county for the collection of taxes
and no meeting of the board of equalization thereof, nor
would there be before said property would be sold by said
sheriff, unless restrained by the court; that the appellant
had no plain, speedy or adequate remedy at law, and unless
said sheriff was restrained from selling said property, the
appellant would suffer irreparable loss and injury; and
prayed a decree that the said goods be returned to him,
and the respondent Croisan be enjoined from selling the
property, and for general relief.    Said statement referred
to in the complaint is as follows:

| Name of Tax-payer, | Section. | Township. | Range. | No. of Acres. | Am't taxable property. |
|---|---|---|---|---|---|
| I. R. Dawson. | 4 | 2W | 10 | 10 | $1,000 00 |
| Name of Town. | | Block. | | | Value of improvements. |
| Champoeg. | | Dock | | | $200 00 |

XVIII. OR.—28.

Statement of facts.

| Names Creditor. | P. O. Address. | Nature of Indebtedness. | Amount. |
|---|---|---|---|
| Mrs. E. Eberhard | Hubbard | Mortgage | $1,000 00 |
| Total indebtedness | | | $1,000 00 |
| Value of merchandise | | | $1,000 00 |
| Money, notes, accounts and shares of stock | | | $1,800 00 |
| Gross | | $4,000 00 | |
| Road 38, total | | $3,000 00 | |

The endorsement on said statement referred to in the complaint is as follows:

List of taxable property of I. R. Dawson, assignee Eberhard. Filed 188

County Assessor,
53 76
Costs 10
_____
63 76

"To E. N. Croisan, Sheriff of Marion County, Oregon: The within described personal property, valued at $2,800, and consisting of merchandise kept for sale at Champoeg, in said Marion county, and notes and accounts employed as capital in a general merchandise business at said Champoeg, having been duly assessed to I. R. Dawson, assignee, who is not a permanent resident of said Marion county, but who is the owner of, and in charge and possession of, said personal property, I have demanded from him immediate payment of the tax thereon at 19 2-10 mills on the dollar, that being the same rate per centum as last year's taxes in said Marion county, amounting on said personal property to the sum of fifty-three and seventy-six one-hundredths dollars; but the said I. R. Dawson has failed, neglected and refused to pay the same or any part thereof. I therefore place the same in your hands for collection in the manner provided by law.

Dated at Salem, Oregon, the 2d day of August, 1888.
[ Signed ]                                        T. B. PATTON,
Assessor for Marion County, Oregon."

The respondents filed an answer to the complaint denying that the appellant had no remedy at law, as alleged therein, or that he would suffer any loss or injury unless the said sheriff were restrained from selling said property;

and for a further defense justified the taking of the $225 worth of goods under the proceedings referred to in the complaint.   To which further answer the appellant demurred upon the ground that the same did not contain facts sufficient to constitute a defense.   The case thereafter came on for hearing before the said circuit court upon the said complaint, answer and demurrer; whereupon said court ordered and decreed that the demurrer be overruled, and the appellant having failed to reply to said answer, ordered that the complaint be dismissed, that the injunction theretofore issued be dissolved, and that the respondents recover their costs and disbursements; which is the decree appealed from herein.

*Milton W. Smith*, for Appellant.

*Geo. H. Burnett*, for Respondents.

THAYER, C. J.—The attempt to enforce payment of the tax in question by the summary mode adopted by the assessor is sought to be justified under § 2835, Annotated Code, which reads as follows: "The assessor shall require every person to pay his poll taxes of every kind at the time of assessing the same, and in default of such payment the assessor shall immediately give to the sheriff a list of such poll taxes, and the sheriff shall immediately collect the same by sale of personal property or in the mode directed in the preceding section; and when any personal property or any other personal estate shall be assessed to any person who is not a permanent resident of the county, or who is about to depart or to remove his property therefrom, the assessor shall demand immediate payment of the tax thereon at the same rate per centum as the preceding year's taxes, and in default of such payment he shall immediately collect the same in the manner aforesaid, and the assessor shall note on the assessment roll all the poll and other taxes so given to the sheriff for collection, and the sheriff shall pay over and account for the same as the other taxes."   This section constitutes § 2 of an Act entitled "An Act to facilitate the collection of taxes

in certain cases," approved October 24, 1886. Said Act was intended, no doubt, to apply to a class of transient persons residing temporarily in the county, and to a class who were residing in the county but about to depart or remove their property therefrom. Its object evidently was to prevent those classes of persons from avoiding the payment of taxes upon personal property assessed to them. The first mentioned class includes persons who go into a county without any fixed purpose of residing there permanently, and remain unsettled until such time as they may determine where they will establish a permanent residence. It also includes persons who come into a county to remain during a part of the year for health, convenience or business.

The second class includes persons who are residing in the county, but have arranged their affairs with a view of departing therefrom or removing their property to some other locality. The Act does not in terms include non-residents of the county engaged in carrying on business therein, which seems to have been the *status* of the appellant in this case. Eberhard was engaged in the mercantile business at Champoeg, Marion county, had a store and other property there, but became insolvent and made an assignment. His liabilities in the main were probably in favor of Portland merchants, and I suppose they insisted upon his appointing the appellant, a resident of Portland, his assignee; at all events he did so appoint him, and he qualified and entered upon the discharge of his trust.

The appointment was made on the twenty-sixth day of May, 1888, and thereafter, and on the twentieth day of July, 1888, while the appellant was engaged settling up the business, the assessor of the county proceeded to assess the assigned property. The assessment was properly made, and if the assessor had allowed it to take the usual course of other assessments upon property in the county for State, county and school purposes, it would have obviated the contention under consideration. Why

the assessor should have insisted upon the immediate pay-
ment of the tax, at the same rate per cent. as the preced-
ing year's taxes, is very remarkable.   The assignee
merely stepped into the shoes of the insolvent, and the
collection of the legal tax upon the property would have
been as secure if the ordinary mode of assessment, levy
and collection of taxes had been pursued in regard to it
as that of any other property tax in the county.   The
administration of the estate of the insolvent was under
the control of the circuit court, and it could, and doubt-
less would, have directed its payment if necessary.   The
affair indicates that there has been unnecessary haste
regarding it, and that if the assessor had considered the
matter more thoroughly he would have pursued the course
suggested, and thereby have better subserved the interests
of the county.

The counsel for the appellant insists that said section of
the Act approved October 24, 1866, above set out, is uncon-
stitutional and void, and for myself I can hardly perceive how
it can be reconciled with the clause of the Constitution
which requires that all taxes shall be equal and uniform.
The preceding year's taxes may not have been at a greater
per cent. than that of the year when the assessment was
made; it possibly may have been at the same rate per
cent.   That, however, would have been the merest coinci-
dence.   So far as this court can know, it may have been
double the rate per cent.   But if the appellant did not
belong to the class of persons provided for in said section
of the Act referred to, then it is unnecessary to determine
whether or not said section is unconstitutional.   I am
satisfied, after a thorough examination of the section, that
it does not, either in terms or by intendment, apply to a
person occupying the *status* which the appellant did in the
premises.   I do not think it included him any more than it
would any business man of the county who were to estab-
lish his residence in an adjoining county, and continue his
business in the former one.   Said section of the Act was
not adopted for the purpose of assessing taxpayers, and

the authority therein conferred upon the assessor and sheriff will not be extended beyond its specific terms.

The respondent's counsel contends that the appellant was not entitled to an injunction to restrain the sheriff from enforcing payment of the tax by the summary proceeding, whether it was regular or not. That an injunction to restrain the collection of an illegal tax will not be granted unless the case is brought under some acknowledged head of equity jurisdiction is a well settled principle of law. Where the tax is assessed against personal property, and there is no fraud in the proceeding, an injunction is not the proper remedy, unless it is shown that the recovery of damages would be an inadequate redress. I was very much inclined, in the outset, to the belief that the appellant's complaint, filed herein, was not sufficient to entitle him to an injunction. It looked to me as though his only remedy was to pay the tax under protest, and then bring an action at law to recover it back, or to sue the sheriff for the value of the property seized, as in other cases of trespass. But since considering the matter, I am disposed to change the view I at first entertained. The appellant was an assignee of the property seized for the benefit of creditors, and it was doubtless included in his inventory of the property of the insolvent's estate, which stood charged against him at his appraised value. He was therefore under obligations to account for the property, and if taken and carried away it would necessarily embarrass him very much in the settlement of his affairs as trustee. I do not think that it would be overstraining the rule to hold that a trustee in possession of property charged with a trust should be protected by injunction from a threatened wrongful caption and asportation of a part of the property by a party acting under color of office. If the sheriff had been acting under process issued out of a court, the appellant could have applied to the court for an order to compel him to desist from interfering with the property. Every court has authority to control its own process, and a resort to it in the latter case by

motion would be a proper course to pursue. But in the present case the appellant is unable to invoke any such remedy, and the recovery of damages would hardly be an adequate redress.

Mr. Cooley, in his work on taxation, at page 541, after having stated on the previous page that a tax would not be restrained on the ground merely that it was irregular or erroneous, says: "But it is not a mere irregularity where one is denied his legal right to work out a road tax, and the amount is demanded in money, nor when a tax once paid is demanded a second time; nor when property is unlawfully exempted from taxation, thereby increasing the burden upon complainant; nor when property which is exempt from taxation by law is assessed; nor when one's assessment has been increased without giving him the notice to which by law he is entitled. In all these cases the party taxed is denied a substantial right, or his tax is unlawfully increased beyond his due proportion, and his right to an adequate remedy is unquestionable." According to this view, the assessment of the property of an owner, and demand of the immediate payment of the tax thereon, at the same rate per cent. as the preceding year's taxes, without allowing the party an opportunity to have his indebtedness deducted, or to go before the board of equalization to have his assessment corrected, would certainly, if not authorized by law, be the denial of a substantial right.

The main ground upon which courts of equity refuse to issue the writ of injunction in cases of illegal taxation, is not in consequence of their lack of jurisdiction in such cases, but through considerations of public policy. This conclusion is clearly sustained by the same author. He says, on page 556 of the work referred to, as follows: "The available remedy in equity, when any is admissible, is commonly that by injunction. It is probable that this remedy has many times been awarded in equity with too little regard to any other consequences than those which concerned the individual applying for it. But the personal

consequences are not the only ones which must be kept in view in these cases. When the illegalities complained of affect only the person complaining, an injunction which restrains the collection as to him may cause no considerable mischief, and may very properly be awarded if a sufficient case is made out, but when they affect the whole tax levy, as they often do, a court should be extremely cautious in awarding, on the complaint of one person, or even of several, a process which may reach the cases of others not complaining, and which may seriously embarrass all the operations of the government depending on the source of revenue which, by means of it, would be stopped." The case under consideration is free from any such embarrassing circumstances as suggested by the learned author. It does not affect the source of revenue of the county of Marion except to the extent of $53.76, and the county can much better afford to lose the entire sum than have its officers exact it from the appellant in violation of his substantial rights.

The decree appealed from will be reversed, and the case remanded to the said circuit court with directions to make the injunction perpetual, as prayed in appellant's complaint.